```
                  UNITED STATES DISTRICT COURT
                 SOUTHERN DISTRICT OF NEW YORK

In re:                              :
                                         Docket #1:22-cv-03885-
 CARPENTER,                         : ALC-VF

                Plaintiff,          :

   - against -                      :

 OSCAR HEALTH, INC., et al.,        : New York, New York
                                      September 8, 2022
                Defendants.         :
                                      REMOTE STATUS
------------------------------------ : CONFERENCE


                    PROCEEDINGS BEFORE
              THE HONORABLE VALERIE FIGUEREDO,
               UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Plaintiffs:          LEVI & KORSINSKY, LLP
                         BY:  ADAM M. APTON, ESQ.
                         55 Broadway, 10th Floor
                         New York, New York 10006

                         GLANCY PRONGAY & MURRAY LLP
                         BY:  CHARLES H. LINEHAN, ESQ.
                         1925 Century Park East, Suite 2100
                         Los Angeles, California 90067

                         GLANCY PRONGAY & MURRAY LLP
                         BY:  GREGORY BRADLEY LINKH, ESQ.
                         230 Park Avenue, Suite 358
                         New York, New York 10169



Transcription Service:  Carole Ludwig, *Transcription Services*
                        155 East Fourth Street #3C
                        New York, New York 10009
                        Phone:  (212) 420-0771
                        Email:  Transcription420@aol.com


Proceedings conducted telephonically and recorded by
electronic sound recording;
Transcript produced by transcription service
```

APPEARANCES - CONTINUED:

For Defendants:            SKADDEN, ARPS, SLATE, MEAGHER & FLOM
                           BY:  TANSY WOAN, ESQ.
                                JAY B. KASNER, ESQ.
                           One Manhattan West
                           New York, New York 10001-8602

For the Underwriter        WILLKIE FARR & GALLAGHER LLP
Defendants:                BY:  BRADY M. SULLIVAN, ESQ.
                           787 Seventh Avenue
                           New York, New York 10019

**INDEX**

**E X A M I N A T I O N S**

| Witness | Direct | Cross | Re-Direct | Re-Cross |
|---------|--------|-------|-----------|----------|
| None | | | | |

**E X H I B I T S**

| Exhibit Number | Description | ID | In | Voir Dire |
|----------------|-------------|----|----|-----------|
| None | | | | |

PROCEEDINGS                    4

THE CLERK:  This IS the matter of Carpenter vs. Oscar Health, Inc., et al, Docket #22-cv-3885, the Honorable Valerie Figueredo, presiding.

Counsel, please note your appearance for the record, starting with plaintiff's counsel.

MR. ADAM M. APTON:  Good morning.  This is Adam Apton from Levi & Korsinsky; I represent plaintiffs.

HONORABLE VALERIE FIGUEREDO (THE COURT):  Good morning, Mr. Apton.  This is Judge Figueredo.  Is there anyone else from plaintiffs or --

MR. APTON:  Yes.

MR. CHARLES LINEHAN:  Good morning, your Honor; this is Charles Linehan from Glancy, Prongay & Murray. On the line with me should be Greg Linkh, also from my firm.  We represent plaintiff, Lorin Carpenter, and also the proposed co-lead plaintiffs.

THE COURT:  Okay.  Thank you.

Is there anyone else from plaintiffs?

How about is there -- I know the motions are unopposed, but I'm wondering if there's anyone from defense counsel on the line?

MS. TANSY WOAN:  Good morning, your Honor. This is Tansy Woan from Skadden Arps.  I am joined by my colleague, Jay Kasner, also from Skadden Arps.  We are

PROCEEDINGS                    5

on behalf of the Oscar Health defendants and the individual defendants.  Good morning.

THE COURT:  Good morning.  Thank you.

Good morning, everyone.  So I just wanted to quickly touch base about the motion for the appointment of co-lead plaintiffs --

MR. BRADY M. SULLIVAN:  Your Honor, I'm so sorry to interrupt the Court. I just wanted to state my appearance, as well.  This is Brady Sullivan on behalf of the underwriter defendants, from the Willkie Farr firm.

THE COURT:  Oh, no, sorry, Mr. Sullivan.  It's hard to tell how many people are on the line on these telephone calls.  And I apologize for not giving you an opportunity to chime in earlier.

Is there anyone else on the line at this point?

Okay.  So I think I was -- I reviewed the filings for the appointment of lead co-plaintiffs and lead counsel.  And I know there's a proposed stipulation.  Even if the motion is unopposed, I still have to consider whether the factors on the PSLRA are satisfied.  And the one thing that I didn't see in the filings and I was hoping someone could point me to them if they're there is it seemed from the filings that the

PROCEEDINGS                    6

two proposed co-lead plaintiffs are unrelated individuals.  And I'm not sure there's -- or at least if you could point me wherever the declarations might be to a showing that they could cohesively and effectively manage the litigation, so something in any of the filings that would indicate that.

MR. APTON:  Your Honor, this is Adam Apton from Levi & Korsinsky, proposed co-lead counsel, I guess. There is no declaration because the parties did not initially move as co-lead plaintiffs; it was only after we moved and were able to effectively come to an agreement on the structure of the case that we proposed it for the Court's consideration.  That said, our stipulation is with client authority and client consent. And with a group of two and the firms who represent those clients, frankly there should be no question that the case can be effectively managed, especially under, you know, past precedent from this district and the Eastern District of New York and frankly anywhere.

So we, respectfully, don't see an issue with the co-lead proposed structure.  But, subject to the Court's questioning, we could certainly provide additional information if necessary.

THE COURT:  Well, let me ask you.  When you say

PROCEEDINGS                7

precedent from this Court or the Eastern District, do you want to specifically point me somewhere?  I had looked at some of the cases that you had cited previously, and in some of them, for instance, there would be like a sentence or two in the declaration explaining that, despite the lack of a prior relationship, you know, they had either business experience or whatever it may be that could provide an evidentiary basis or showing to show that they could cohesively and effectively manage the litigation.  And so if you want to just point me to a specific case that I could look at that would say that, you know, where you just have two, maybe you don't need that showing or something to that effect?

          MR. APTON:  So, your Honor, on page two -- actually, the bottom of page one to the top of page two of the letter we had submitted in response to the defendants' letter, to Docket 53, we do cite a handful of cases where we have similar procedural history insofar as you have movants who initially moved separately, individually, you know, both with I guess evidentiary support in the record with respect to their own individual adequacy, who then by stipulation agreed to, I guess, revise their motions, if you will, or amend

PROCEEDINGS                    8

the pending motions to a stipulation.  So, for example, *Deputy v. Akibia*, you know, the movants initially moved separately but then submitted stipulations.  *Grabb Holdings* is another one, so on and so forth.  Submitting a stipulation to resolve motion practice at this procedural posture of the case is not uncommon.

          With respect to each movant --

          THE COURT:  I agree with you that it's not uncommon.  I looked at those cases.  But even in those instances, the Court still went through, even if it was just a quick analysis, it still went through the customary analysis under the PSLRA.  And I believe, at least in *Garrett Evans*, it looked like there was only -- which was the last case you cited -- there was only one plaintiff, not co-lead plaintiffs.  And I thought in another one of those the declaration specifically said something to address the issue of the fact that they seemed to be unrelated individuals with no prior connection.

          And so I guess that's -- I understand that you've stipulated to this.  I think I still need to go through, even if it is just a quick analysis, and so just for that one factor if there is something in any of the declarations or in the proposed stipulation that I

PROCEEDINGS                    9

can cite to.

          MR. APTON:  Sure.  Thank you, your Honor.  So, for example, Mr. Heon, in connection with his initial motion papers, Docket 19-4, provides some information about his background.  And then in Ms. Riley-Fischer's motion papers there is some information as to her background, too.  But I would let my co-counsel speak to that; he may be more familiar with the exact location.

          MR. LINEHAN:  Yes.  This is Charles Linehan from Glancy.  I think with Ms. Riley-Fischer's initial motion we didn't provide any additional background information about her location or career, anything like that, because I think the standard in this district doesn't require that.  But we could supplement the record with that information if the Court would like.

          And I just would like to note further that I think in -- you know, I've been trying to rack my brain here thinking about the case law for proposed co-lead after the initial motions are filed.  I think usually there is no declaration put in place at that point -- there might be some exceptions, but my recollection is typically not.  But, you know, what if there is more information the Court would like to justify this grouping of co-lead plaintiffs, Ms. Riley-Fischer would

PROCEEDINGS                10

be happy to provide anything that the Court would require.

THE COURT:  So, again, I want to resolve this as quickly as possible, so I'm not trying to -- if you can point me to a case that says I don't need to look at this, then I'm happy to not look at it.  But I will cite one decision for you which I thought was particularly useful, and this is what I was specifically thinking was missing here.  It's 2022 Westlaw 147 1122. It's a recent, May 2022, decision from this circuit where there were co-lead plaintiffs seeking to be appointed.  And for the -- they didn't have a pre-existing relationship, and what the Court there says is that they submitted an affidavit describing their decision to participate in this case and how they will cooperate on decisions concerning this case that (indiscernible).  And that was basically just like a few-line statement in the declaration, and that was enough to support the idea that they could cohesively and effectively manage the litigation.

If you -- again, if there's case law that says I don't really need to be looking at that, if you can point me in that direction, I'm happy to do it.  I don't -- I'm not necessarily sure that the cases you cited in

PROCEEDINGS                    11

your letter are directly on point; but, again, if I'm missing something, you know, feel free to call it out. But that was really the only sticking point that I had with regard to the motion.

MR. APTON:  So, your Honor, this is Adam Apton again.  And I'm familiar with the *Paysafe* case because I was involved in lead plaintiff proceedings at a certain point.  And so the particular issue here, in *Paysafe*, Mr. Vianney and Eric Price, the two movants that submitted the declaration, they filed their initial motion together as a group.  And so to substantiate their motion, their grouping, if you will, they filed a declaration, which is common practice.  When you move as a group, you put in this declaration to explain to the Court and show the other movants why your group is cohesive and can function properly.

Procedurally, that is different than when you have two motions, two movants who file individually initially; and then only afterwards, they decide to resolve their motions amicably and then file a stipulation like we have in the movants in the cases we cited in our letter.  In that later scenario, that latter scenario, there is typically not a motion because counsel confers with their respective clients and

PROCEEDINGS                    12

everyone agrees and the stipulation, you know, resolves the pending motions.  So, for example, in *Paysafe*, that's why there's a declaration there.  In cases like *Paysafe*, where a group is initially proposed as a lead plaintiff, there's a declaration; but in cases where there's a stipulation resolving separate motions, there's typically not a declaration.

THE COURT:  Okay.

MR. LINEHAN:  And if I -- sorry, this is Charles.  May I add something to that, your Honor?

THE COURT:  Yes, go ahead.

MR. LINEHAN:  So in the case where two individuals who are unrelated move as a group, the concern for the Court and the concern under PSLRA is that they've simply manufactured that grouping for the purpose of aggregating their losses and kind of achieving lead-plaintiff status.  So there's some skepticism by the district court at that point that the grouping is legitimate and not just lawyer driven and not just, you know, like I said, a bid to be appointed to lead plaintiff and lead counsel kind of illegitimately through kind of an illegitimate aggregation.

But I think in the cases where lead plaintiffs

PROCEEDINGS                    13

decide to team up afterwards, there's less skepticism there because everyone's cards are on the table, everyone can see what each other's financial interest is.  And so the grouping is not likely to be motivated by a desire to aggregate the movant's financial interests to kind of gain some advantage over, you know, other would-be applicants.

And so I think that's -- again, my recollection as -- you know, I could go back and look, but I think my recollection is is that when there's a stipulation following lead plaintiff motions, there typically is not a declaration, and typically the declaration is required for initial motions of unrelated plaintiffs because of this skepticism about the grouping at the outset.

THE COURT:  Okay, Okay.  I --

MS. WOAN:  Your Honor, this is -- oh, I'm sorry.

THE COURT:  No, no, go ahead.  I'm sorry to interrupt.

MS. WOAN:  I'm so sorry.  Your Honor, this is Tansy Woan from Skadden speaking on behalf of Oscar.  If I just may jump in very briefly, I think your Honor hit the nail on the head that, you know, there is still the analysis that needs to be undergone by the Court in

PROCEEDINGS                     14

assessing the lead plaintiff.  And to Mr. Apton's point on the latter category where lead plaintiff motions are first filed and then afterwards the plaintiffs come together to resolve the motions amicably through a stipulation, I think you can look to the *Garrett Evans* case cited by the plaintiffs on page two of their letter.  There it had somewhat similar facts to what Mr. Apton was describing.  Three separate motions were filed, and then after seeing each other's motions, the movants decided to come together as proposed lead plaintiffs and sought to appoint two of their counsel, two law firms, as co-lead counsel.  And there they filed a stipulation with language very similar to what you see in plaintiff's stipulation here, UCF 50, that the movants filed a stipulation saying after reviewing each other's submissions, they believed it was in the best interests of the putative class that they serve together.  Judge Stanton rejected that saying it was inefficient and duplicative and instead, as you noted earlier at this conference, that the Court ended up just granting the one individual movant's motion with the greatest financial interest.

THE COURT:  Okay.  So I think I've heard enough, unless anyone else wants to chime in with

PROCEEDINGS                      15

anything further.

Okay.

MR. APTON:  Your -- well --

THE COURT:  Go ahead.

MR. APTON:  No -- this is Adam Apton, your Honor.  I don't really have much to say other than comment on defendants', I guess, you know, position or lack of position on this motion.  It's not quite clear why they have objected to this.  I understand the Court's independent obligation as it was stated, but defense previously said that they took no position on the motion; and yet, they find the need to involve themselves in this.  I am not quite clear as to the purpose or where it's coming from.  But with that, I have nothing further productive to add, your Honor.

THE COURT:  Okay.

MS. WOAN:  And, your Honor, if I may just briefly respond to that?  This is Tansy Woan from Skadden.

THE COURT:  Yes.  No, go ahead.

MS. WOAN:  Thank you.  That is correct.  We don't take a position on who is ultimately appointed lead plaintiff.  We just believed that it was important to bring forth to the Court the evidentiary showing that

PROCEEDINGS                        16

was applicable to the motion here, given it wasn't raised by plaintiffs and Judge Carter had already spoken onto the issue.  Further, as Judge Sweet said in the *Parelli* decision, which is cited by both parties, the process by which a lead plaintiff is selected works better with more information than less.  That's page 405 to 406 of his decision.  And there he actually did refer to and review and account for defendants' letter, despite them not taking a position, but certain information they brought to the Court in connection with his decision on the lead plaintiff motion.

THE COURT:  Okay.  Well, as I said, I'm going to try to resolve this relatively quickly. I'd just ask that the parties, if you can request a transcript from this conference, which was being audio recorded, that would be very helpful.  But, otherwise, you know, thanks for your time this morning, and I'll try to issue an order relatively soon.

MR. APTON:  Thank you, your Honor.

THE COURT:  Thank you, everyone.

(Whereupon, the matter is adjourned.)

17

C E R T I F I C A T E

I, Carole Ludwig, certify that the foregoing transcript of proceedings in the case of Carpenter v. Oscar Health, Inc. et al, Docket #22-cv-03885-ALC-VF, was prepared using digital transcription software and is a true and accurate record of the proceedings.

Signature___*Carole Ludwig*_____

Carole Ludwig

Date:     September 9, 2022