UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

LORIN CARPENTER and VICKI RILEY-FISCHER, Individually and on Behalf of All Others Similarly Situated, :

          Plaintiffs, :

v. :

OSCAR HEALTH, INC., MARIO SCHLOSSER, SIDDHARTHA SANKARAN, ARI FISCHEL, JEFFERY H. BOYD, JOEL CUTLER, JOSHUA KUSHNER, TERI LIST, CHARLES E. PHILLIPS, JR., DAVID PLOUFFE, ELBERT O. ROBINSON, JR., VANESSA A. WITTMAN, GOLDMAN SACHS & CO. LLC, MORGAN STANLEY & CO. LLC, ALLEN & COMPANY LLC, WELLS FARGO SECURITIES, LLC, CREDIT SUISSE SECURITIES (USA) LLC, BOFA SECURITIES, INC., COWEN AND COMPANY, LLC, LIONTREE ADVISORS LLC, SAMUEL A. RAMIREZ & COMPANY, INC., and SIEBERT WILLIAMS SHANK & CO., LLC, :

          Defendants. :

: 1:22-cv-03885 (VSB) (VF)

: ECF CASE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE OSCAR DEFENDANTS' MOTION TO DISMISS

Jay B. Kasner
Alexander C. Drylewski
Tansy Woan
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001-8603
(212) 735-3000

*Attorneys for Defendants Oscar Health, Inc., Mario Schlosser, Siddhartha Sankaran, Ari Fischel, Jeffery H. Boyd, Joel Cutler, Joshua Kushner, Teri List, Charles E. Phillips, Jr., David Plouffe, Elbert O. Robinson, Jr., and Vanessa A. Wittman*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

ARGUMENT ........................................................................................................................... 1

I.      PLAINTIFFS' HEIGHTENED PLEADING STANDARD ............................................. 1

II.     PLAINTIFFS HAVE ABANDONED ANY FALSITY THEORY .................................. 2

III.    PLAINTIFFS' OMISSION THEORY FAILS ................................................................. 2

        A.      Plaintiffs Fail to Plead Inadequate Controls ........................................................ 2

        B.      Plaintiffs Fail to Plead a Duty to Disclose .......................................................... 5

        C.      Plaintiffs Fail To Plead Regulation S-K Violations ............................................ 7

        D.      Plaintiffs Fail to Plead Materiality ...................................................................... 9

CONCLUSION ........................................................................................................................ 10

## TABLE OF AUTHORITIES

Page(s)

### CASES

*Allen v. N.Y.C. Housing Authority,*
No. 10 Civ. 168(CM)(DF), 2012 WL 4794590 (S.D.N.Y. Sept. 11, 2012) ........................2

*In re Alstom SA Securities Litigation,*
406 F. Supp. 2d 402 (S.D.N.Y. 2005).....................................................................................1

*Altayyar v. Etsy, Inc.,*
242 F. Supp. 3d 161 (E.D.N.Y. 2017) *aff'd*, 731 F. App'x 35 (2d Cir. 2018).....................5

*In re American International Group, Inc. 2008 Securities Litigation,*
741 F. Supp. 2d 511 (S.D.N.Y. 2010)....................................................................................7

*Arora v. HDFC Bank Ltd.,*
No. 20-CV-4140(EK)(JMW), 2023 WL 3179533 (E.D.N.Y. May 1, 2023)................4, 10

*Asay v. Pinduoduo Inc.,*
No. 20-1423, 2021 WL 3871269 (2d Cir. Aug. 31, 2021) (summary order) .....................7

*In re Bear Stearns Cos. Securities, Derivative, & ERISA Litigation,*
763 F. Supp. 2d 423 (S.D.N.Y. 2011).....................................................................................7

*Blackmoss Investments Inc. v. ACA Capital Holdings, Inc.,*
No. 07 Civ. 10528, 2010 WL 148617 (S.D.N.Y. Jan. 14, 2010)........................................9

*In re Chembio Diagnostics, Inc. Securities Litigation,*
616 F. Supp. 3d 192 (E.D.N.Y. 2022) ...........................................................................2, 10

*In re CIT Group, Inc. Securities Litigation,*
349 F. Supp. 2d 685 (S.D.N.Y. 2004)....................................................................................4

*In re Citigroup Securities Litigation,*
No. 20 Civ. 9132 (LAP), 2023 WL 2632258 (S.D.N.Y. Mar. 24, 2023) ...........................6

*City of Pontiac Policemen's & Firemen's Retirement System v. UBS AG,*
752 F.3d 173 (2d Cir. 2014).................................................................................................10

*Compania Del Bajo Caroni (Caromin), C.A. v. Bolivarian Republic of Venezuela,*
341 F. App'x 722 (2d Cir. 2009) ...........................................................................................3

*In re Duke Energy Corp. Securities Litigation,*
282 F. Supp. 2d 158 (S.D.N.Y. 2003), *aff'd*, 113 F. App'x 427 (2d Cir. 2004)................10

*Dusenbery v. United States*,
    534 U.S. 161 (2002).................................................................................................4

*ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*,
    553 F.3d 187 (2d Cir. 2009)....................................................................................10

*In re Facebook, Inc. IPO Securities & Derivative Litigation*,
    986 F. Supp. 2d 487 (S.D.N.Y. 2013)......................................................................5

*Fresno County Employees' Retirement Ass'n v. comScore, Inc.*,
    268 F. Supp. 3d 526 (S.D.N.Y. 2017)......................................................................2

*Gutman v. Lizhi Inc.*,
    No. 21-CV-317 (LDH) (PK), 2022 WL 4646471 (E.D.N.Y. Oct. 1, 2022) .......7

*Hawaii Structural Ironworkers Pension Trust Fund v. AMC Entertainment Holdings,
Inc.*,
    422 F. Supp. 3d 821 (S.D.N.Y. 2019)......................................................................8

*Hutchison v. Deutsche Bank Securities Inc.*,
    647 F.3d 479 (2d Cir. 2011)....................................................................................10

*In re IAC/InterActiveCorp Securities Litigation*,
    695 F. Supp. 2d 109 (S.D.N.Y. 2010)......................................................................8

*Jones v. N.Y. State Div. of Military & Naval Affairs*,
    166 F.3d 45 (2d Cir. 1999)......................................................................................10

*Ladmen Partners, Inc. v. Globalstar, Inc.*,
    No. 07 Civ. 0976(LAP), 2008 WL 4449280 (S.D.N.Y. Sept. 30, 2008)............2

*Litwin v. Blackstone Group, L.P.*,
    634 F.3d 706 (2d Cir. 2011)..................................................................................2, 10

*In re Magnum Hunter Resources Corp. Securities Litigation*,
    26 F. Supp. 3d 278 (S.D.N.Y. 2014), *aff'd*, 616 F. App'x 442 (2d Cir. 2015)...................4

*McKenna v. Smart Technologies Inc.*,
    No. 11 Civ. 7673(KBF), 2012 WL 1131935 (S.D.N.Y. Apr. 3, 2012) ...............2

*Medina v. Tremor Video, Inc.*,
    640 F. App'x 45 (2d Cir. 2016) ...............................................................................8

*Meyer v. Jinkosolar Holdings, Co.*,
    761 F.3d 245 (2d Cir. 2014)..................................................................................6, 7

*In re MF Global Holdings Ltd. Securities Litigation*,
    982 F. Supp. 2d 277 (S.D.N.Y. 2013)......................................................................5

*Moab Partners, L.P. v. Macquarie Infrastructure Corp.*,
    No. 21-2524, 2022 WL 17815767 (2d Cir. Dec. 20, 2022),
    *petition for cert. docketed*, No. 22-1165 (U.S. June 1, 2023)...........................................6, 9

*MYL Litigation Recovery I LLC v. Mylan N.V.*,
    No. 19-CV-1799 (JPO), 2020 WL 1503673 (S.D.N.Y. Mar. 30, 2020).............................4

*Oklahoma Law Enforcement Retirement System v. Papa John's International, Inc.*,
    517 F. Supp. 3d 196 (S.D.N.Y. 2021)......................................................................7

*Southeastern Pennsylvania Transportation. Authority v. Orrstown Financial Services*,
    No. 1:12-cv-00993, 2022 WL 3572474 (M.D. Pa. Aug. 18, 2022)....................................7

*Panther Partners Inc. v. Ikanos Communications, Inc.*,
    681 F.3d 114 (2d Cir. 2012)...........................................................................2, 8

*Panther Partners Inc. v. Jianpu Technology Inc.*,
    No. 18 Civ. 9848 (PGG), 2020 WL 5757628 (S.D.N.Y. Sept. 27, 2020) ...........................8

*In re Petrobras Securities Litigation*,
    116 F. Supp. 3d 368 (S.D.N.Y. 2015)......................................................................9

*Plymouth County Retirement Ass'n v. Array Technologies, Inc.*,
    No. 21 Civ. 4390 (VM), 2023 WL 3569068 (S.D.N.Y. May 19, 2023)...............................9

*In re Riskified Ltd. Securities Litigation*,
    No. 22cv3545 (DLC), 2023 WL 3791653 (S.D.N.Y. June 2, 2023) ...............................7, 8

*Rombach v. Chang*,
    355 F.3d 164 (2d Cir. 2004)...............................................................................6

*Tongue v. Sanofi*,
    816 F.3d 199 (2d Cir. 2016)...............................................................................10

*In re UBS AG Securities Litigation*,
    No. 07 Civ. 11225(RJS), 2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012),
    *aff'd sub nom. City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
    752 F.3d 173 (2d Cir. 2014)...............................................................................2

*Wallace v. IntraLinks*,
    No. 11 CV 8861(TPG), 2013 WL 1907685 (S.D.N.Y. May 8, 2013)................................2

*Waterford Township Police & Fire Retirement System v. Regional Management Corp.*,
    No. 14 CV 3876-LTS, 2016 WL 1261135 (S.D.N.Y. Mar. 30, 2016) ...............................7

*Woolgar v. Kingstone Companies, Inc.*,
    477 F. Supp. 3d 193 (S.D.N.Y. 2020)......................................................................4

**OTHER AUTHORITIES**

SEC Staff Accounting Bulletin, No. 99, 64 Fed. Reg. 45150-01 (Aug. 19, 1999).........................9

The Opposition fails to identify any facts supporting Plaintiffs' central claim: that Oscar[1] had inadequate controls governing CMS "premium data." (AC ¶ 5.) Plaintiffs do not identify any facts showing what controls were inadequate or how, much less when. Instead, the Opposition resorts to speculation and mischaracterization of Oscar's post-March 2021 IPO disclosures, none of which say ***anything*** about controls for CMS data. For instance, Plaintiffs highlight a February 2022 announcement of a weakness in ***IT controls***, but fail to explain how this implies a weakness in controls for CMS data. Likewise, Plaintiffs simply infer—without support—that because Oscar announced in November 2021 "enhancements" in its risk adjustment process, earlier CMS data controls must have been inadequate. Thus, Plaintiffs' core theory—now based purely on omissions rather than any false statements—fails under any pleading standard.

Regardless, Plaintiffs ignore Oscar's actual disclosures which, far from expressing confidence in controls, noted they were continually being refined and that Oscar was subject to the very risks Plaintiffs claim to have been misled. Plaintiffs' attempt to plead a Regulation S-K violation fares no better. Plaintiffs argue that Oscar failed to disclose a "trend" of faulty controls, but never explain when the trend began or how long it lasted. Plaintiffs also fail to explain how this purported omission was material. Plaintiffs' claims should be dismissed with prejudice.

## ARGUMENT

### I.    PLAINTIFFS' HEIGHTENED PLEADING STANDARD

Plaintiffs' claims sound in fraud and must meet the pleading standard of Rule 9(b). (Br. at 12-13.) Although Plaintiffs disavow their fraud allegation as a mere "scrivener's error" (Opp. at 9 n.6), they "cannot so facilely put the fraud genie back in the bottle." *In re Alstom SA Sec. Litig.*,

---

[1] Capitalized terms shall have the same meanings ascribed in the opening brief (ECF No. 80, "Br."). All emphasis is added and citations are omitted unless otherwise noted. Exhibits to the Reply Declaration of Tansy Woan, dated July 7, 2023 (ECF No. 84), are referred to as "Reply Ex. __."

406 F. Supp. 2d 402, 410 (S.D.N.Y. 2005), *abrogated on other grounds*, 817 F.3d 393 (2d Cir. 2016). And while Plaintiffs point to boilerplate disclaimers of fraud (Opp. at 9), their own cases make clear that they "cannot evade the Rule 9(b) strictures by summarily disclaiming any reliance on a theory of fraud.'" *Fresno Cnty. Emps.' Ret. Ass'n v. comScore, Inc.*, 268 F. Supp. 3d 526, 558 (S.D.N.Y. 2017). (Opp. at 10.) Plaintiffs' theory is that "[D]efendants ***knew*** about the contradictory [information] but omitted it from the Registration Statement," and thus "sound[s] in fraud." *In re Chembio Diagnostics, Inc. Sec. Litig.*, 616 F. Supp. 3d 192, 202-04 (E.D.N.Y. 2022).[2] (Br. at 12-13; Opp. at 23.) In any event, Plaintiffs' claims fail to satisfy even Rule 8. (Br. at 12.)

## II.     PLAINTIFFS HAVE ABANDONED ANY FALSITY THEORY

Plaintiffs retreat from challenges to the "literal truth" of the statements at issue, asserting now that their claims are based solely on omissions. (Opp. at 14.) As a result, any claims based on falsity have been abandoned. *See In re UBS AG Sec. Litig.*, 2012 WL 4471265, at *10-11 (S.D.N.Y. Sept. 28, 2012), *aff'd sub nom.*, 752 F.3d 173 (2d Cir. 2014); *see also Allen v. N.Y.C. Hous. Auth.*, 2012 WL 4794590, at *4 (S.D.N.Y. Sept. 11, 2012) (dismissing abandoned claims).

## III.    PLAINTIFFS' OMISSION THEORY FAILS

### A.      Plaintiffs Fail to Plead Inadequate Controls

Plaintiffs' omissions theory—that Oscar did not disclose that it "failed to maintain adequate controls" to ensure "the integrity of the premium data submitted to regulatory authorities" —falls flat. (Opp. at 1.) Plaintiffs fail to plead "facts as to what internal controls were insufficient

---

[2] *See also Ladmen Partners, Inc. v. Globalstar, Inc.*, 2008 WL 4449280, at *11 (S.D.N.Y. Sept. 30, 2008) (similar); *McKenna v. Smart Techs. Inc.*, 2012 WL 1131935, at *8 (S.D.N.Y. Apr. 3, 2012) (Item 303 claims sounded in fraud). Plaintiffs' cases, which involved well-pled facts in support of a negligence theory, are inapposite. *See, e.g.*, *Wallace v. IntraLinks*, 2013 WL 1907685, at *12 (S.D.N.Y. May 8, 2013) ("defendants negligently failed to discover" that their largest customer's contract was likely to expire). Despite Plaintiffs' reliance on *Litwin* and *Panther Partners*, the *Litwin* defendants did not contest that Rule 8 applied, and the court in *Panther* did not analyze the issue other than to note that Rule 8 generally applies to Section 11 claims. *Litwin v. Blackstone Grp., L.P.*, 634 F.3d 706, 715 (2d Cir. 2011); *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 120 (2d Cir. 2012).

or not followed." (Br. at 14-15.) Instead, they claim that Oscar admitted to faulty controls governing CMS data. (Opp. at 14-15 & n.13.) This is false.

*First*, Plaintiffs' reliance on Oscar's FY21 Form 10-K (Opp. at 12-13) ignores the plain text of that disclosure, which addressed ***IT*** controls specific to the ***preparation of financial statements***—not controls governing CMS data. (Br. at 18-19.) Accordingly, this supposed "admission" is nothing of the sort. Plaintiffs also ignore that the weaknesses in IT controls existed only as of December 31, 2021—nine months ***after*** the IPO. (*Id.* at 18.) Plaintiffs speculate that control issues "necessarily existed at the time [Oscar] was collecting the premium data to CMS which was well-prior to the IPO in 2021." (Opp. at 17-18 (citing AC ¶ 55).) But there are no facts pled, including in the cited AC paragraph, as to when Oscar collected the data for CMS to conclude that the issues "necessarily" existed at the time of the IPO. That is particularly troubling given Plaintiffs plead no facts as to whether the data at issue involved (a) data collected to assign risk scores and determine risk adjustment payments, (b) data collected from providers to confirm those payments, or (c) data that was then (i) submitted to Oscar's auditor for review or (ii) transmitted to CMS. (Br. at 6-7, 9-10.) Nor do Plaintiffs plead facts as to why the purported deficiency in controls would have materialized at the time of data collection, as opposed to any other point in the RADV process. These pleading failures are exacerbated by the fact that the 2019 audit at issue, slated to begin in May 2020, was postponed to 2021. (Br. at 10.)[3] Indeed, the November 2021 earnings call upon which Plaintiffs rely disclosed that the 2019 audit results had only just been "***recently*** completed." (Ex. I, at 6.)

---

[3] Plaintiffs plead no facts on the timing of the RADV audit phases to support their speculation. *See also* Reply Ex. N, 2019 CMS Memo; Reply Ex. O, 2019 Timeline (showing auditors do not begin their audit until January–September, 2021, and that the "Audit Tool" does not open until "July 1, 2021," well after the March 2021 IPO).) These documents on the CMS website are judicially noticeable. (Br. at 6 n.5.) *See also Compania Del Bajo Caroni (Caromin), C.A. v. Bolivarian Republic of Venez.*, 341 F. App'x 722, 724 (2d Cir. 2009). Even under the normal RADV schedule, data may be subject to audit "several years" after initial transfers are made. (Ex. F, Reg. St. at 33-34.)

3

***Second***, Plaintiffs point to that same earnings call during which Oscar stated that it "made further enhancements in [its] risk adjustment process in 2021." (Opp. 16.)  Plaintiffs fail to plead any facts showing that these "enhancements" related to controls for CMS "premium" data. *See MYL Litig. Recovery I LLC v. Mylan N.V.*, 2020 WL 1503673, at *6 (S.D.N.Y. Mar. 30, 2020). And even if they had, Plaintiffs ignore well-established law that enhancements do ***not*** establish that prior controls were inadequate. (Br. at 19.) *See also Dusenbery v. United States*, 534 U.S. 161, 172 (2002) ("[O]ur cases have never held that improvements in the reliability of new procedures necessarily demonstrate the infirmity of those that were replaced."); *Arora v. HDFC Bank Ltd.*, 2023 WL 3179533, at *6 (E.D.N.Y. May 1, 2023); *In re CIT Grp., Inc. Sec. Litig.*, 349 F. Supp. 2d 685, 690-91 & n.6 (S.D.N.Y. 2004).

***Third***, Plaintiffs rely on a statement that the adjustment was partly "operational about how we got the data together." (Opp. at 14.) But Plaintiffs plead no facts connecting this statement to the controls governing "***premium*** data submitted to regulatory authorities." (AC ¶ 4.) In any event, this comment was hardly an admission that controls were deficient, let alone so materially faulty that they gave rise to an affirmative duty to disclose.[4] (Br. at 14.) And as Oscar disclosed, there were other causes for the adjustment, which Plaintiffs do not dispute, such as the "relative performance basis" on which audits are conducted (Ex. I, at 12), *i.e.*, adjustments depend on one's performance ***relative to other insurers*** (Br. at 7). As also disclosed, the audit at issue was fraught with uncertainty for a variety of reasons, which even CMS acknowledged contributed to an increase in adjustments (which again, Plaintiffs also do not dispute). (*Id.* at 9-10.)[5]

---

[4] *See In re Magnum Hunter Res. Corp. Sec. Litig.*, 26 F. Supp. 3d 278, 295 (S.D.N.Y. 2014) ("[T]hat defendants recognized problems, announced that they were implementing effective controls and procedures, and then recognized more problems does not indicate that their statements were false . . . ."), *aff'd*, 616 F. App'x 442 (2d Cir. 2015); *Woolgar v. Kingstone Cos.*, 477 F. Supp. 3d 193, 230 (S.D.N.Y. 2020).

[5] Although Plaintiffs challenge—without citation—Defendants' reliance on CMS documents (Opp. at 15 n.14), they ignore Defendants' authorities showing that those documents are judicially noticeable. (Br. at 6 n.5.)

4

***Finally***, Plaintiffs rely on a statement by Defendant Schlosser on a call that "all the stuff is really available to [sic] in my fingertips" in response to a question about "claims visibility" and "Q2 cost." (Opp. at 13, 14.) But they fail to plead any facts connecting this to controls for "***premium*** data submitted to [CMS]." (AC ¶¶ 4 & 39; Opp. at 14, 17 & n.12.) Indeed, the transcript reveals that he was discussing visibility into "what is happening with conversations in customer service" and "utilization management volume." (Reply Ex. P, Aug. 12, 2021 Tr. at 11-12.) This is irrelevant to Plaintiffs' claims on CMS "premium" data and controls. (AC ¶ 4.)

### B.    Plaintiffs Fail to Plead a Duty to Disclose

Even if Oscar had faulty controls, that alleged omission did not render any challenged statement misleading because Oscar never touted confidence in its controls. In Plaintiffs' cases, courts found a duty to disclose based on ***affirmative*** statements touting such confidence. (Opp. at 13.) *See, e.g.*, *In re MF Glob. Holdings Ltd. Sec. Litig.*, 982 F. Supp. 2d 277, 317 (S.D.N.Y. 2013) (controls described as "robust" and "comprehensive"). Here, by contrast, Oscar's statements "suggest[ed] a company actively working to improve its compliance efforts." (Br. at 17-18.) And contrary to Plaintiffs' suggestion that this Court ignore Oscar's warnings that no accounting firm had attested to the effectiveness of controls (Opp. at 16), Judge Furman recently relied upon a similar disclaimer in dismissing Section 11 claims. (Br. at 18 (citing *Yaroni*).)[6]

Plaintiffs also challenge Oscar's statement that it "perform[s] ongoing monitoring of our compliance with CMS risk adjustment requirements." (Opp. at 14.) As Plaintiffs concede, however, Oscar warned that "[w]hile ***we believe*** our compliance efforts . . . comply with applicable

---

[6] *See also Altayyar v. Etsy, Inc.*, 242 F. Supp. 3d 161, 176-77 (E.D.N.Y. 2017) (crediting disclosure that "Etsy's compliance practices were imperfect" in dismissing section 11 claims), *aff'd*, 731 F. App'x 35 (2d Cir. 2018). Plaintiffs' reliance on *Facebook* is inapposite. (Opp. at 16-17.) There, the court found general warnings insufficient based on well-pled pled facts showing the risks of revenue cuts had transpired at the time of the IPO, including specific company calls to analysts "only minutes" after filing the Registration Statement that revenue estimates were cut. *In re Facebook, Inc. IPO Sec. & Deriv. Litig.*, 986 F. Supp. 2d 487, 516-7 (S.D.N.Y. 2013).

laws, we may be subject to audits . . .." (Br. at 17.) Unable to allege that this belief was not "sincerely held," Plaintiffs assert that it was misleading by omission. (Opp. at 16 n.16.) Putting aside that the AC does not challenge this statement, Plaintiffs do not explain how the alleged omission about controls had anything to do with legal compliance or CMS requirements. *See Rombach v. Chang*, 355 F.3d 164, 175 (2d Cir. 2004) (affirming dismissal because plaintiffs only "allege generally" what was omitted without explaining why the statement was misleading).

Additionally, unlike in Plaintiffs' cases, the challenged statements were not specific enough about controls to trigger a duty to make additional disclosures. *Cf. Meyer v. Jinkosolar Holdings Co.*, 761 F.3d 245, 249, 252 (2d Cir. 2014) (descriptions of specific "pollution abatement equipment" and the 24-hour "environmental teams" triggered a duty to disclose that the steps were failing to prevent serious ongoing pollution); *Moab Partners, L.P. v. Macquarie Infrastructure Corp.*, 2022 WL 17815767, at *4 (2d Cir. Dec. 20, 2022) (relying on specific discussions of customer base while leaving out that most customers stored No. 6 oil, which would soon be heavily regulated), *petition for cert. docketed*, No. 22-1165 (U.S. June 1, 2023). Rather, they were similar to the general disclosures that courts have deemed insufficient to trigger such a duty. *See, e.g.*, *In re Citigroup Sec. Litig.*, 2023 WL 2632258, at*15 (S.D.N.Y. Mar. 24, 2023) (statements that risk governance framework is "align[ed] with specifically identified standards were not guarantees of conformity" and "too general" "to be actionable").

Further, far from suggesting that its controls would avoid unfavorable RADV audit results, Oscar disclosed just the opposite—*i.e.*, that it faced significant risks associated with RADV audits, including that they could "impact [Oscar's] revenue . . . and introduce additional uncertainties that could have a material adverse effect on [Oscar's] results of operations." (Ex. F, at 33.) Although Plaintiffs call Oscar's disclosures "generic" (Opp. at 17), Oscar specifically disclosed the risk of

6

RADV adjustments like the one that occurred. (Br. at 17-19.) Oscar also disclosed how "operational" pieces of the audit, like sourcing documents from providers, risked an adjustment payment. (*Id.* at 15.) In light of the disclosures made, it is not clear what more Oscar could have said. *See Asay v. Pinduoduo Inc.*, 2021 WL 3871269, at *3 (2d Cir. Aug. 31, 2021) (summary order).[7] And while Plaintiffs criticize Oscar for not disclosing "then-existing internal control issues" (Opp. at 16), again they plead no facts giving rise to a plausible inference that any issues had materialized at the time of the IPO. *Supra* at 3. *See also Oklahoma L. Enf't Ret. Sys. v. Papa John's Int'l, Inc.*, 517 F. Supp. 3d 196, 211 (S.D.N.Y. 2021) (company not required to disclose more than a risk of violations because plaintiffs failed to plead that risk had yet materialized).

Further negating any duty to disclose, Plaintiffs allege no facts demonstrating that the purported omissions "both existed, and were ***known or knowable***, at the time of the offering." *Gutman v. Lizhi Inc.*, 2022 WL 4646471, at *4 (E.D.N.Y. Oct. 1, 2022). (Br. at 16.)[8] This distinguishes Plaintiffs' cases where courts found a duty to disclose based on ***well-pled facts*** and ***documents*** showing defendants knew or should have known of the alleged issues. (Opp. at 13.)[9]

### C.      Plaintiffs Fail To Plead Regulation S-K Violations

Plaintiffs' claim under Regulation S-K fails for several reasons. (Br. at 19-23.) ***First***, Plaintiffs do not allege "***specific facts***" showing that any of the Oscar Defendants had "***actual***

---

[7] *See also In re Riskified Ltd. Sec. Litig.*, 2023 WL 3791653, at *10-11 (S.D.N.Y. June 2, 2023) (rejecting suggestion that disclosures were "too generic" given "extensive disclosures" made elsewhere).

[8] *See also S.E. Pa. Trans. Auth. v. Orrstown Fin. Servs.*, 2022 WL 3572474, at *47-50 (M.D. Pa. Aug. 18, 2022) (plaintiffs failed to allege "particular facts suggesting that the certifying officers knew, prior to [Offering]," of evidence contradicting their statements, despite a later "admission" that controls "were not effective"); *Waterford Twp. Police & Fire Ret. Sys. v. Reg'l Mgmt. Corp.*, 2016 WL 1261135, at *11 (S.D.N.Y. Mar. 30, 2016) (similar).

[9] *See, e.g.*, *Jinkosolar*, 761 F.3d at 251 (relying on a company report to Chinese regulators about the undisclosed problems); *In re Bear Stearns Cos., Inc. Sec., Deriv., & ERISA Litig.*, 763 F. Supp. 2d 423, 471 (S.D.N.Y. 2011) (relying on an SEC report that contradicted company's certification of the effectiveness of their controls); *In re Am. Int'l Grp., Inc, 2008 Sec. Litig.*, 741 F. Supp. 2d 511, 522-23 (S.D.N.Y. 2010) (relying on PwC's "critical warning[s] . . . regarding risk control problems" and other explicit internal warnings).

*knowledge*" of the purportedly faulty controls at the time of the IPO. *Medina v. Tremor Video, Inc.*, 640 F. App'x 45, 48-49 (2d Cir. 2016). (Br. at 19, 21, 23.)[10] Plaintiffs' conclusory assertion that "Oscar executives had access to the premium control at issue . . . [and] regularly reviewed this data"—unaccompanied by any citation to the AC (Opp. at 23)—fails to satisfy this standard.[11]

**Second**, Plaintiffs do not plead the requisite "trend." (Br. at 20.) The Opposition argues that Oscar failed to disclose a known trend, *i.e.*, "the lack of internal controls" (Opp. at 23), but fails to identify any facts as to when the supposed lack of controls began or its duration, degree or magnitude. (Br. at 20.) Plaintiffs' speculation that the failure in controls must have existed at the time of the IPO (Opp. at 23) is insufficient and readily distinguishes the cases upon which they rely.[12] *See also In re IAC/InterActiveCorp Sec. Litig.*, 695 F. Supp. 2d 109, 119 (S.D.N.Y. 2010) (allegations of trend "stated in the most general of terms" and relying on confidential witnesses "without any facts that might corroborate the[ir] statements" "do[es] not provide enough detail" to establish plausibility). Plaintiffs argue that "Oscar executives had access to the premium [data] at issue" before the IPO (Opp. at 23), but fail to "identify any specific trend that [Oscar's] management was alerted to" when viewing this data, or how this would have revealed the purportedly inadequate controls. (Br. at 21-22.) *See also In re Riskified*, 2023 WL 3791653, at *7-

---

[10] Plaintiffs ignore Defendants' explanation as to why a knowledge requirement should apply to Item 105. (Br. at 23 n.10.) And even if Item 105 does not require actual knowledge, Plaintiffs still fail to plead that the purported control issues were "knowable" at the time of the IPO. *See supra* at 3, 7. (Br. at 23 & n.10.)

[11] Plaintiffs' cases involved specific allegations of knowledge entirely absent here. *See, e.g.*, *Hawaii Structural Ironworkers Pension Tr. Fund v. AMC Ent. Holdings, Inc.*, 422 F. Supp. 3d 821, 840 (S.D.N.Y. 2019) (plaintiffs adequately pled that "failure to convert or retain [target company's] loyalty program members was plausibly knowable" because CEO made a public statement that the "failure of [target's] customers to switch over [was] occurring" on the same date as the initial Form S-3 was filed and months prior to actual date of the offering). And Plaintiffs' assertion that "Oscar executives" had access to "premium" data does nothing to suggest which if any of the individual Oscar Defendants, including the non-officer directors, had knowledge of the purported issues.

[12] *See supra* n.6 (distinguishing *Facebook*); *Ikanos*, 681 F.3d at 121-2 (relying on several allegations of defendants' knowledge prior to the offering, including calls from their largest customers that chips were defective and related Board discussions); *Panther Partners Inc. v. Jianpu Tech. Inc.*, 2020 WL 5757628, at *7, *10 (S.D.N.Y. Sept. 27, 2020) (citing "multiple [pre-IPO] public reports").

8; *Blackmoss Invs. Inc. v. ACA Cap. Holdings, Inc.*, 2010 WL 148617, at *9 (S.D.N.Y. Jan. 14, 2010) (Item 303 requires pleading "with some specificity" facts showing actual knowledge).

***Third***, even assuming Oscar knew of purportedly faulty controls, Plaintiffs fail to plead that the controls were "reasonably likely" to have a material effect on its RADV audit results.[13] (Br. at 22.) Unlike in *Moab Partners*, where the defendant disclosed risks arising from "changes in government regulations" but omitted a major impending regulation, here Oscar disclosed risks specific to the RADV adjustment, not just audits in general. *Moab Partners*, 2022 WL 17815767, at *3-4. (Br. at 8-9.) When these disclosures "are viewed alongside the public information available," like the audit postponement and regulatory changes, "[Oscar's] omission of the disclosures Plaintiffs seek are rendered immaterial." *Plymouth Cnty. Ret. Ass'n v. Array Techs., Inc.*, 2023 WL 3569068, at *19 (S.D.N.Y. May 19, 2023).

### D.      Plaintiffs Fail to Plead Materiality

Plaintiffs also fail to rebut Oscar's showing that any omission was immaterial. (Br. at 24-25.) Plaintiffs do not contest that the alleged omission is assumed to be immaterial given that its quantitative impact falls below the 5% threshold. Instead, they assert this assumption can be overcome by two qualitative factors—the relative importance of MLR and internal controls to Oscar. (Opp. at 20.) But neither of these factors are "particularly egregious" such that they can overcome this presumption.[14] (Br. at 24 n.11.) *See* SEC Staff Accounting Bulletin, No. 99, 64 Fed. Reg. 45150-01 (Aug. 19, 1999) (identifying "self-dealing or misappropriation by senior

---

[13] Plaintiffs' failure to allege materiality for Item 303 similarly disposes of its Item 105 claim. (Br. at 23.)

[14] Plaintiffs' cases relied upon far more "egregious" factors than any alleged here. *See, e.g.*, *In re Petrobras Sec. Litig.*, 116 F. Supp. 3d 368, 380 (S.D.N.Y. 2015) (errors in financial statements that were directly related to concealment of an unlawful bribery scheme could "call into question the integrity of the company as a whole").

management" as examples of "particularly egregious" qualitative factors).[15] Additionally, a stock price drop cannot overcome the presumption of immateriality on its own. (Opp. at 21.) *See ECA, Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 205 (2d Cir. 2009) ("[M]arket volatility alone is too blunt an instrument to be depended on in considering whether a fact is material"); *In re Duke Energy Corp. Sec. Litig.*, 282 F. Supp. 2d 158, 161 (S.D.N.Y. 2003) ("[B]are allegations of stock price declines cannot cure the immateriality of an overstatement as small as the one here at issue."), *aff'd*, 113 F. App'x 427 (2d Cir. 2004). That rings especially true when the "corrective disclosure" included other information that may have caused the price drop. *See Hutchison v. Deutsche Bank Sec. Inc.*, 647 F.3d 479, 490 (2d Cir. 2011).[16] Finally, Plaintiffs do not dispute that the challenged statements are too generic to be material. (Br. at 23-24.). *See also Arora*, 2023 WL 3179533, at *5-6.[17]

## CONCLUSION

Oscar Defendants request that the AC be dismissed in its entirety with prejudice.[18] *See Jones v. N.Y. State Div. of Military & Naval Affairs*, 166 F.3d 45, 50 (2d Cir. 1999).

---

[15] Plaintiffs plead no facts explaining how the challenged controls or MLR were material to investors, distinguishing this case from Plaintiffs' cases, which involve highly material factors such as misstatements of earnings. (Opp. at 19-20 (citing *In re Kidder*, *Celestica*, and *Ganino*).) And unlike in Plaintiffs' cases involving other factors, the AC alleges no facts demonstrating that the challenged controls were particularly important to investors. *See, e.g.*, *Litwin*, 634 F.3d at 720 (omissions pertained to defendant's "flagship segment," which "play[ed] a significant role in the company's history, operations, and value" and was one of the "largest [funds] ever raised"). Although Plaintiffs claim that Oscar "touted its internal controls" (Opp. at 20), Oscar did no such thing. *Supra* at 5. And even if investors viewed MLR as important, the impact of the RADV adjustment on MLR was minimal. (Br. at 24.)

[16] Oscar's stock price dropped after its 3Q21 earnings release which, as noted in the initial complaint, also revealed higher net COVID cases and significant SEP membership growth. (ECF No. 1, ¶¶ 56-60; AC ¶ 5; Ex. J, at 1.)

[17] Plaintiffs also do not dispute that they fail to plead scienter and ignore that "courts in this circuit have consistently" dismissed Securities Act claims sounding in fraud for failure to plead scienter, which makes sense given the intent element of fraud claims. *In re Chembio Diagnostics, Inc. Sec. Litig.*, 616 F. Supp. 3d 192, 203; (Br. at 25.) Contrary to Plaintiffs' suggestion, the Second Circuit has not held otherwise. In *Sanofi*, the Second Circuit affirmed only the trial court's holding that the complaint failed to plead falsity, not its dicta on scienter. *Tongue v. Sanofi*, 816 F.3d 199, 202, 208 & n.11 (2d Cir. 2016). In *City of Pontiac*, defendants did not argue scienter on appeal—the court simply reiterated that generally, "[p]laintiffs need not allege scienter." *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 182-84 (2d Cir. 2014).

[18] Plaintiffs' failure to plead their Section 11 claim requires dismissal of their Section 15 claim. (Br. at 25.)

10

Dated: New York, New York                    Respectfully submitted,
      July 7, 2023

                                          SKADDEN, ARPS, SLATE,
                                            MEAGHER & FLOM LLP

                                        By:  s/ Jay B. Kasner
                                        Jay B. Kasner
                                        (jay.kasner@skadden.com)
                                        Alexander C. Drylewski
                                        (alexander.drylewski@skadden.com)
                                        Tansy Woan
                                        (tansy.woan@skadden.com)
                                        One Manhattan West
                                        New York, New York 10001-8603
                                        Telephone: (212) 735-3000

                                        *Attorneys for Defendants Oscar Health,*
                                        *Inc., Mario Schlosser, Siddhartha*
                                        *Sankaran, Ari Fischel, Jeffery H. Boyd,*
                                        *Joel Cutler, Joshua Kushner, Teri List,*
                                        *Charles E. Phillips, Jr., David Plouffe,*
                                        *Elbert O. Robinson, Jr., and Vanessa A.*
                                        *Wittman*