# Exhibit A

22-2787-cv
Tseng v. De Vries

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 21st day of November, two thousand twenty-three.

PRESENT: RAYMOND J. LOHIER, JR.,
WILLIAM J. NARDINI,
BETH ROBINSON,
*Circuit Judges.*

------------------------------------------------------------------

CHIEN-LUNG TSENG, BILLY SUNG, JERRY YUE,

*Plaintiffs-Appellants,*

ALEX GARNETT, Individually and on Behalf of All Others Similarly Situated,

*Plaintiff,*

v.                                                        No. 22-2787-cv

COLLEEN A. DE VRIES, COGENCY GLOBAL INC., CITIGROUP GLOBAL MARKETS INC., CHINA RENAISSANCE SECURITIES (HONG KONG) LIMITED, RLX TECHNOLOGY INC.,

YING (KATE) WANG,

*Defendants-Appellees,*

LONG (DAVID) JIANG, YILONG WEN,
YUEDUO (RACHEL) ZHANG,

*Defendants.*\*

---------------------------------------------------------------------

| | |
|---|---|
| FOR APPELLANTS: | MATTHEW M. GUINEY (Patrick Donovan, *on the brief*), Wolf Haldenstein Adler Freeman & Herz LLP, New York, NY; Thomas L. Laughlin, IV, Scott+Scott Attorneys at Law, New York, NY |
| FOR APPELLEES: | MICHAEL C. GRIFFIN (Scott D. Musoff, Robert A. Fumerton, *on the brief*), Skadden, Arps, Slate, Meagher & Flom LLP, New York, NY; Susanna M. Buergel, Daniel S. Sinnreich, Paul, Weiss, Rifkind, Wharton & Garrison LLP, New York, NY |

Appeal from a judgment of the United States District Court for the

Southern District of New York (Paul A. Engelmayer, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED,

AND DECREED that the judgment of the District Court is AFFIRMED.

---

\* The Clerk of Court is directed to amend the caption as set forth above.

2

Plaintiffs-Appellants appeal from an October 3, 2022 judgment of the United States District Court for the Southern District of New York (Engelmayer, *J.*) dismissing their claims under Sections 11 and 15 of the Securities Act of 1933,[1] stemming from the initial public offering (IPO) of securities issued by Defendant-Appellee RLX Technology Inc., an e-cigarette company incorporated in the Cayman Islands and operating primarily in China. We assume the parties' familiarity with the underlying facts and the record of prior proceedings, to which we refer only as necessary to explain our decision to affirm.

Plaintiffs alleging violations of Section 11 are not required to plead scienter, reliance, or loss causation. *See NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 156–57 (2d Cir. 2012). Issuers are thus "subject to virtually absolute liability under section 11." *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 359 (2d Cir. 2010) (quotation marks omitted). The parties agree, and we assume without deciding, that Section 11 authorizes suit for failure to disclose information required under Item 5 of Form 20-F for foreign issuers who file a registration statement. *See Moab Partners, L.P. v.*

---

[1] The Appellants have abandoned their claim under Section 12 of the Securities Act.

*Macquarie Infrastructure Corp.*, No. 21-2524, 2022 WL 17815767, at *3 n.2 (2d Cir.

Dec. 20, 2022), *cert. granted*, No. 21-1165, 2023 WL 6319659 (U.S. Sept. 29, 2023);

*Willard v. UP Fintech Holding Ltd.*, 527 F. Supp. 3d 609, 619 n.5 (S.D.N.Y. 2021).

Item 5(D) of Form 20-F requires that registrants "discuss, for at least the current

financial year, any known trends, uncertainties, demands, commitments or

events that are reasonably likely to have a material effect on the company's net

sales or revenues, income from continuing operations, profitability, liquidity or

capital resources, or that would cause reported financial information not

necessarily to be indicative of future operating results or financial condition."

Form 20-F, U.S. Sec. & Exch. Comm'n, https://www.sec.gov/files/form20-f.pdf

(last visited Nov. 11, 2023) [https://perma.cc/7TPS-RJ3U].

The Appellants' second amended complaint alleges violations of RLX's

disclosure obligations under Section 11 and Item 5.[2]  The complaint alleges that

RLX's IPO materials failed to disclose three statements made by the State

---

[2]  In the second amended complaint, the Appellants initially styled their Item 5 claims as violations of Item 303 of SEC Regulation S-K, 17 C.F.R. § 229.303.   Item 5 of Form 20-F is the analogue of Item 303 for foreign corporations, and the District Court therefore evaluated Appellants' Item 303 claim as an Item 5(D) claim.   *See Willard*, 527 F. Supp. 3d at 619 n.5.   We assume, without deciding, that for the purposes of this appeal, the duties arising under Item 5(D) are identical to those arising under Item 303.

Tobacco Monopoly Administration (STMA), the Chinese government agency charged with regulating China's tobacco industry, relating to possible regulation of e-cigarettes in China: the STMA's replies in September 2017 and October 2018 to the National People's Congress, and its reply in September 2019 to the National Committee of the Chinese People's Political Consultative Conference.

Among other things, the September 18, 2017 reply announced that the STMA was "actively studying and formulating" a regulatory scheme that would incorporate "[e]lectronic cigarettes into the management of tobacco products." App'x 57. The October 16, 2018 reply similarly announced that the STMA "fully agree[d] that . . . [e]lectronic cigarettes . . . shall be managed as tobacco products." App'x 61. Finally, the September 29, 2019 reply revealed that although the STMA "explicitly [brought] heated tobacco products into the scope of monopoly management," it had not yet done so for e-cigarettes and was instead "strengthen[ing] the . . . legal research on [e]lectronic cigarettes" by exploring the regulatory models implemented by other countries and "communicat[ing] and coordinat[ing] closely with relevant departments" to "actively promote the introduction of control measures." App'x 67.

5

The Appellants claim that, by failing to disclose the STMA's replies, RLX misleadingly stated or omitted important facts related to the risk of more stringent regulation of e-cigarettes in China, including the state monopoly-style regulation of e-cigarettes as a traditional tobacco product. In dismissing the complaint, the District Court concluded that the offering materials "adequately disclosed the possibility of stricter regulations—indeed, the possible outright prohibition—of e-cigarettes in China" and that in any case "there was no *material* nondisclosure." *Garnett v. RLX Tech. Inc.*, 632 F. Supp. 3d 574, 601, 607 (S.D.N.Y. 2022) (emphasis added). Reviewing the District Court's judgment *de novo*, *IWA Forest Indus. Pension Plan v. Textron Inc.*, 14 F.4th 141, 145 (2d Cir. 2021), we affirm on the basis that the offering materials adequately disclosed the risk of stricter regulations of e-cigarettes in China.

In particular, the offering materials discussed several regulations, such as a national ban on e-cigarette sales to minors and a ban on using e-cigarettes in public places in various cities, that the Chinese government and local governments implemented before the IPO. The offering materials also explained that in 2019 the STMA encouraged e-cigarette companies to shut down

6

their e-commerce operations and withdraw internet advertising for e-cigarettes, which RLX elected to do. The offering materials further cautioned that RLX "cannot assure you that government authorities will not impose further restrictions on e-vapor products in the future, including but not limited to requirements to obtain and maintain licenses, approvals or permits for relevant business operation." App'x 177.

As the District Court noted, RLX's offering materials "cited strict regulatory measures taken by other countries with respect to e-cigarettes," including "the imposition of taxes on e-cigarette sales and the outright prohibition of e-cigarettes," and "recited the local, administrative, and national regulatory measures that Chinese authorities had already put in place with respect to e-cigarettes as of the time of the IPO." *Garnett*, 632 F. Supp. 3d at 601. We agree that this discussion, together with the IPO documents' warning that e-cigarettes may be subject to yet more regulation, was "sufficient to pick up the regulatory risk that later materialized: that China would decide to calibrate regulation of e-cigarettes to track its regulation of tobacco products." *Id.* at 602. The offering materials thus adequately disclosed the risk that e-cigarettes would

7

be regulated as a traditional tobacco product, even though they did not refer to the STMA's three statements.

The Appellants nevertheless argue that disclosing the STMA's three replies would have confirmed for investors that regulation of e-cigarettes as a tobacco product in China—and the attendant risks associated with such regulation—would materialize.   We disagree.   While the 2017 and 2018 replies indicated the STMA's preliminary intention to regulate e-cigarettes as a traditional tobacco product, the final September 2019 reply—which indicated only that the STMA was still exploring the regulatory models of other countries with respect to e-cigarettes—reflected a retreat from any specific intent to regulate e-cigarettes as a tobacco product.   The regulation of e-cigarettes as a traditional tobacco product was thus not "reasonably likely to occur" at the time of RLX's IPO, *see Stratte-McClure v. Morgan Stanley*, 776 F.3d 94, 103 (2d Cir. 2015) (quotation marks omitted), and RLX had no duty to disclose the replies.

We have considered the Appellants' remaining arguments and conclude that they are without merit.   For the foregoing reasons, the judgment of the District Court is AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court