UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
                                                    :
LORIN CARPENTER,                                    :
*individually and on behalf of all others*          :
*similarly situated*,                               :
                                                    :         22-CV-3885 (VSB)
                                    Plaintiffs,     :
                                                    :         **OPINION & ORDER**
                    - against -                      :
                                                    :
                                                    :
OSCAR HEALTH, INC., *et al.*,                        :
                                    Defendants.  :
--------------------------------------------------------X

<u>Appearances</u>:

Casey Edwards Sadler
Charles H. Linehan
Gregory Bradley Linkh
Glancy Prongay & Murray LLP
Los Angeles, CA

Shannon Lee Hopkins
Levy & Korinsky LLP
Stamford, CT
*Counsel for Plaintiff*

Jay B. Kasner
Alexander C. Drylewski
Tansy Woan
Skadden, Arps, Slate, Meagher & Flom LLP
New York, NY
*Counsel for Defendants Oscar Health, Inc., Mario Schlosser, Siddhartha Sankaran, Ari Fischel,*
*Jeffery H. Boyd, Joel Cutler, Joshua Kushner, Teri List, Charles E. Phillips, Jr., David Plouffe,*
*Elbert O. Robinson, Jr., and Vanessa A. Wittman*

Brady M. Sullivan
Charles D. Cording
Todd G. Cosenza
Zeh Sheena Ekono
Willkie Farr & Gallagher LLP
New York, NY
*Counsel for Defendants Goldman Sachs & Co. LLC, Morgan Stanley
& Co. LLC, Allen & Company LLC, Wells Fargo Securities, LLC, Credit Suisse Securities (USA)
LLC, BofA Securities, Inc., Cowen and Company, LLC, LionTree Advisors LLC, Samuel A.
Ramirez & Company, Inc., and Siebert Williams Shank & Co., LLC*

VERNON S. BRODERICK, United States District Judge:

Plaintiffs Vicki Riley-Fischer and Lorin Carpenter (collectively, "Plaintiffs") bring this action against Oscar Health Inc. ("Oscar"), the Individual Defendants[1], (collectively, "the Oscar Defendants"), and the Underwriter Defendants[2], (collectively, "Defendants"). Before me is Defendants' motion to dismiss the amended complaint (the "Motion") pursuant to Rules 8(a), 9(b), and 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 79.) For the reasons set forth below, Defendants' motion to dismiss is GRANTED.

## I.    **Factual Background**[3]

Plaintiffs' claims arise from their allegation that the Registration Statement issued in connection with Oscar's initial public offering ("IPO") contained materially false and/or misleading statements in failing to disclose that Oscar failed to maintain adequate internal controls.

---

[1] The term "Individual Defendants" refers to Mario Schlosser, Siddhartha Sankaran, Ari Fischel, Jeffrey H. Boyd, Joel Cutler, Joshua Kushner, Teri List, Charles E. Phillips Jr., David Plouffe, Elbert O. Robinson Jr., and Vanessa A. Wittman.

[2] The term "Underwriter Defendants" refers to Goldman Sachs & Co. LLC, Morgan Stanley & Co. LLC, Allen & Company LLC, Wells Fargo Securities LLC, Credit Suisse Securities (USA) LLC, BOFA Securities Inc., Cowen & Company LLC, LionTree Advisors LLC, Samuel A. Ramirez & Company Inc., and Siebert Williams Shank & Co. LLC.

[3] I assume Plaintiffs' allegations in the Amended Complaint to be true for purposes of the motion. *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). My references to these allegations should not be construed as a finding as to their veracity, and I make no such findings.

### A. *Oscar's Operations and Risk Adjustment Data Validation Audits*

Oscar is a health insurance company that provides health insurance policies to businesses-employers, as well as to individuals through both Medicare Advantage programs and through healthcare exchanges created under the 2010 Affordable Care Act ("ACA"). (Doc. 72 ("Amended Complaint" or "Am. Compl.") ¶¶ 2, 37.) Oscar states that it is the "first health insurance company built around a full stack technology platform," using technology-driven interfaces that enable customers to access healthcare at an affordable price. (*Id*. ¶ 38.) Like other health insurance companies, Oscar is subject to government regulation. For example, the U.S. Centers for Medicare and Medicaid Services ("CMS") and the Office of the Inspector General for the U.S. Department of Health and Human Services ("HHS") operate a risk adjustment program. (*Id*. ¶ 47.) The risk adjustment program "helps spread healthcare costs such that plans that end up with healthier populations compensate plans that have more costly enrollees (*i.e.*, plans with low actuarial risk compensate those with high actuarial risk)." (*Id*. ¶ 46.)

For each benefit year, insurers first submit data to HHS regarding individual enrollees. (*Id*. ¶ 48.) The submitted data is then used to assign each plan a risk score based on demographic information and diagnoses. (*Id*. ¶¶ 47, 48.) After assessing each plan's relative risk, CMS/HHS average all individual risk scores in risk adjustment covered plans and uses the plan average risk scores combined with other factors to calculate the funds transferred between plans. (*Id*. ¶ 47.) Next, CMS/HHS conduct risk adjustment data validation ("RADV") audits of the enrollee data provided by insurers. (*Id*. ¶ 47.) Based on the results from the RADV audit, insurers may be subject to retrospective payment adjustments; a payment would increase net premiums and a charge/expense would reduce net premiums. (*Id*. ¶¶ 48–51.)

3

### B. *Oscar's IPO and Registration Statement*

On March 2, 2021, Oscar's Registration Statement on Form S-1 (collectively with the prospectus, the "Registration Statement") related to its IPO was declared effective, and Oscar's stock began trading on the New York Stock Exchange on March 3, 2021.  (*Id*. ¶ 52.)  Oscar's Registration Statement explained in a section entitled "Fraud, Waste and Abuse Laws and the False Claims Act" that Oscar "perform[s] ongoing monitoring of [its] compliance with CMS risk adjustment requirements and other applicable laws" in light of "increased scrutiny by the DOJ on health plans' diagnosis coding and risk adjustment practices, particularly for Medicare Advantage plans."  (*Id*. ¶ 71 (alterations in original).)  The Registration Statement also stated that Oscar "refines its estimates as new information becomes available" as part of its risk adjustment process.  (*Id*. ¶ 73.)  In addition, the Registration Statement also contained a risk factor, which stated that "[t]he result of risk adjustment programs may impact [Oscar's] revenue, add operational complexity, and introduce additional uncertainties that have a material adverse effect on [Oscar's] results of operations, financial condition, and cash flows."  (*Id*. ¶ 75.)

### C. *Post-IPO Disclosures and Activity*

On November 10, 2021, Oscar disclosed that its third quarter 2021 medical loss ratio ("MLR")—which "measures the portion of an insurer's income spent on paying patients' claims," (*id*. ¶ 40)—had increased to 99.7%, (*id*. ¶ 53).  Oscar claimed that the MLR increase was driven by higher COVID costs, an "unfavorable" RADV audit result, and the impact of significant SEP[4] membership growth.  (*Id*.)  That same day, on a conference call that Oscar held with analysts and investors, Mario Schlosser, Oscar's Chief Executive Officer ("CEO"),

---

[4] The Amended Complaint does not define "SEP."  However, Defendants' memorandum of law in support of their motion to dismiss defines SEP as Special Enrollment Period.  (Doc. 80 at 3.)

reiterated that the increase in MLR was in part the result of the adverse risk adjustment audit results.  (*Id*. ¶ 54.)  On the same call, Scott Blackley, Oscar's Chief Financial Officer, explained that Oscar "recognized approximately $20 million of risk adjustment expense" related to the RADV audit, but that "the RADV exercise is atypical this year due to COVID," "spans two years, 2019 and 2020," and that Oscar "ha[d] made further enhancements in [its] risk adjustment process in 2021."  (*Id*. ¶ 55.)  Following these disclosures, Oscar's share price fell $4.05 per share, closing at $12.47 per share on November 11, 2021.  (*Id*. ¶ 57.)

### D.  *Oscar's Disclosures Regarding Technology Controls*

On February 25, 2022, Oscar disclosed that it "did not design and maintain effective controls over certain information technology ("IT") general controls for information systems that are relevant to the preparation of [its] financial statements."  (*Id*. ¶ 58.)

### II.  <u>Procedural History</u>

On May 12, 2022, Lorin Carpenter filed the initial complaint in this action, asserting claims under Sections 11 and 15 of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77(k), (o).  (Doc. 1.)  On September 27, 2022, Vicki Riley-Fischer was appointed co-lead plaintiff along with Robert Scott Heon, who has since withdrawn as co-lead plaintiff.  (Docs. 63, 75.)  On December 6, 2022, lead plaintiffs Riley-Fischer and Carpenter filed an amended complaint ("Amended Complaint").  (Doc. 72.)  After I granted an extension of time, (Doc. 77), on April 4, 2023, the Oscar Defendants filed a motion to dismiss the amended complaint, (Doc. 79), along with a memorandum of law, (Doc. 80), and a declaration in support, (Doc. 81).  Later that day, the Underwriter Defendants joined the Oscar Defendants' Motion.  (Doc. 82.)  On June 5, 2023, Plaintiffs filed their opposition to the Motion.  (Doc. 83.)  On July 7, 2023, Defendants filed their reply in support of the Motion to dismiss, (Doc. 85), along with a

declaration in support, (Doc. 84).

### III.    <u>Legal Standards</u>

#### A. *Rule 12(b)(6)*

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor. *Kassner*, 496 F.3d at 237. A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id.* A complaint is "deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)).

### B. *Elements of Securities Act Claims*

"Sections 11, 12(a)(2), and 15 of the Securities Act impose liability on certain participants in a registered securities offering when the publicly filed documents used during the offering contain material misstatements or omissions." *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 358 (2d Cir. 2010). "Section 11 applies to registration statements" filed with the U.S. Securities and Exchange Commission, and provides redress against a security's issuer, underwriter, and certain other statutorily enumerated parties, and "section 12(a)(2) applies to prospectuses and oral communications." *Id*. (citing 15 U.S.C. §§ 77k(a), 77l(a)(2)).

To state a claim under Section 11, the plaintiff must allege that: "(1) she purchased a registered security, either directly from the issuer or in the aftermarket following the offering; (2) the defendant participated in the offering in a manner sufficient to give rise to liability under section 11; and (3) the registration statement 'contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading." *Id*. at 358–59 (citing 15 U.S.C. § 77k(a)). Such a plaintiff "may sue every person who, *inter alia*, signed the registration statement, served as a director or partner in the issuer, or acted as an underwriter with respect to the security." *Garnett v. RLX Tech. Inc.*, 632 F. Supp. 3d 574, 594–95 (S.D.N.Y. 2022), *aff'd sub nom. Tseng v. De Vries*, No. 22-2787-CV, 2023 WL 8073087 (2d Cir. Nov. 21, 2023). "Liability attaches to a security's issuer, its underwriter, and certain other statutorily enumerated parties pursuant to section 11 . . . if any part of the operative registration statements" contained such a misstatement or omission. *In re ProShares Tr. Sec. Litig.*, 728 F.3d 96, 101 (2d Cir. 2013) (internal quotation marks omitted). "Section 15, in turn, creates liability for individuals or entities that control any person liable under section 11." *In re Morgan Stanley*, 592 F.3d at 358 (alterations omitted). "Thus, the

success of a claim under section 15 relies, in part, on a plaintiff's ability to demonstrate primary liability under section[ ] 11." *Id.*

A plaintiff suing under Sections 11, 12(a), and 15 of the Securities Act need not plead scienter, reliance, or causation. *See Tongue v. Sanofi*, 816 F.3d 199, 209 (2d Cir. 2016); *see also Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 120 (2d Cir. 2012) ("Neither scienter, reliance, nor loss causation is an element of § 11 . . . claims."); *In re Qudian Inc. Sec. Litig.*, No. 17-CV-9741, 2019 WL 4735376, at *5 (S.D.N.Y. Sept. 27, 2019) (same). "Issuers are subject to virtually absolute liability under section 11, while the remaining potential defendants under sections 11 and 12(a)(2) may be held liable for mere negligence." *In re Morgan Stanley*, 592 F.3d at 359 (internal quotation marks omitted).

### IV.    Discussion

#### A. *Applicable Pleading Standard*

As a threshold matter, the parties dispute whether Plaintiffs' Section 11 claims are subject to Rule 8 or the heightened pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure. Although fraud is not an element of Section 11 or Section 12, the Second Circuit has explained that "the heightened pleading standard of Rule 9(b) applies to Section 11 and Section 12(a)(2) claims insofar as the claims are premised on allegations of fraud." *Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004). Thus, "while a plaintiff need allege no more than negligence to proceed under Section 11 and Section 12(a)(2), claims that do rely upon averments of fraud are subject to the test of Rule 9(b)." *Id.* Allegations that statements or omissions were "materially false or misleading" or contained "untrue statements of material fact" do not, however, necessarily sound in fraud, as such allegations simply track the language of Section 11 and 12(a)(2). *See In re Wachovia Equity Sec. Litig.*, 753 F. Supp. 2d 326, 375 (S.D.N.Y. 2011).

If a Section 11 or Section 12 claim does not sound in fraud, the ordinary notice pleading standard of Rule 8 applies.

The Amended Complaint alleges that Defendants acted negligently in violating their disclosure obligations by omitting from the Registration Statement that Oscar failed to maintain adequate controls and systems.  (*See* Am. Compl. ¶ 70 ("Nowhere did the Registration Statement disclose that [Oscar] failed to maintain adequate controls and systems to ensure the integrity of premium data . . . [which was] necessary to make the statements in the Registration Statement not misleading, and were required to be included in the Registration Statement but were negligently omitted.".)  Although Plaintiffs contend that the Amended Complaint "expressly disavows any fraud-based claims," (Pls.' Opp. 9 (citing Am. Compl ¶¶ 69, 86, 95))[5], "[a] plaintiff cannot evade the requirements of Rule 9 through artful pleading," *City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp.*, 450 F. Supp. 3d 379, 401 (S.D.N.Y. 2020), and courts must consider whether "the wording and imputations of the complaint are classically associated with fraud," *Rombach*, 355 F.3d at 172.

Here, Defendants argue that Plaintiffs' claims necessarily sound in fraud because of Plaintiffs' claim that Defendants "***knew*** about the contradictory [information] but omitted it from the Registration Statement," (Defs.' Reply 2)[6], and that the Oscar Defendants "***knew*** of purportedly faulty controls but failed to disclose them," (Defs.' Mem. 13 (emphasis in original).)[7]  These statements are insufficient to establish that Plaintiffs' claims sound in fraud.

---

[5] "Pls.' Opp." refers to Plaintiffs' memorandum of law in opposition to the Oscar Defendants' motion to dismiss, filed on June 5, 2023.  (Doc. 83.)

[6] "Defs.' Reply" refers to the Oscar Defendants' reply memorandum of law in support of their motion to dismiss, filed on July 7, 2023.  (Doc. 85.)

[7] "Defs.' Mem." refers to the Oscar Defendants' memorandum of law in support of their motion to dismiss, filed on April 4, 2023.  (Doc. 80.)  The Oscar Defendants' motion to dismiss was joined by the Underwriter Defendants.  (Doc. 82.)

Without more, "that a fact was known and not disclosed does not mean, as a matter of law, that the circumstances of the resulting omission sound in fraud." *Pappas v. Qutoutiao Inc.*, No. 23-1233, 2024 WL 4588491, at *2 (2d Cir. Oct. 28, 2024) (quoting *In re Orion Sec. Litig.*, No. 08-CV-1328, 2009 WL 2601952, at *1 (S.D.N.Y. Aug. 20, 2009)); *accord In re OSG Sec. Litig.*, 971 F. Supp. 2d 387, 406 (S.D.N.Y. 2013) (assertion that defendants "in the exercise of reasonable care . . . knew or should have known" constitutes an allegation sounding in negligence, not fraud). Indeed, the Amended Complaint is devoid of any allegation that Defendants acted with a fraudulent intent or motive, such as to conceal the information that was not disclosed from the market.

Furthermore, Plaintiffs' allegation that Defendants failed to disclose "known trends or uncertainties" as required pursuant to Item 303 of Regulation S–K does not necessarily transform its Section 11 claim into one "sounding in fraud" which demands the application of Rule 9(b). *See Wallace v. IntraLinks*, No. 11-CV-8861, 2013 WL 1907685, at *12 (S.D.N.Y. May 8, 2013) ("[T]he allegations that [the defendant] failed to disclose a known uncertainty supports the claim of Section 11 and 12(a)(2) liability pursuant to Regulation S–K, which plaintiffs are able to allege without requiring the application of Rule 9(b)." (emphasis omitted)).

Accordingly, the Section 11 claims are thus governed by the less stringent pleading standard in Rule 8(a), which requires that the complaint contain a "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although this standard does not require "detailed factual allegations," *Twombly*, 550 U.S. at 555, and places a "minimal burden" on a plaintiff, *In re OSG Sec. Litig.*, 971 F. Supp. 2d at 406, Plaintiffs here must nonetheless plead more than "labels and conclusions," and "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

### B. *Section 11 Claim*

Although Plaintiffs challenge affirmative misrepresentations in the Registration Statement issued in connection with Oscar's IPO, the crux of Plaintiffs' Section 11 Claim is that these statements were rendered misleading by Defendants' failure to disclose the inadequacy of Oscar's internal controls.  (Pls.' Opp. 14 ("Plaintiffs are alleging that the statements in the Registration Statement were misleading due to their omissions regarding Oscar's internal control issues and the related material risks." (citing Am. Compl. ¶¶ 72, 74)).)  In other words, I must first consider whether Plaintiffs plead facts to demonstrate that Defendants failed to disclose issues with Oscar's internal controls before evaluating whether Plaintiffs have sufficiently pled that the Registration Statement contained any material omissions.

#### 1.    Failure to Disclose the Inadequacy of Internal Controls

Plaintiffs allege that the Registration Statement issued in connection with Oscar's IPO contained misstatements and omitted material information regarding the adequacy of the internal controls and systems designed to ensure the integrity of the premium data that Oscar submitted to regulatory authorities.  (Am. Compl. ¶¶ 70–76; *see also* Pls.' Opp. 1, 13.)  As an initial matter, because Plaintiffs allege that the Registration Statement contained material misrepresentations and omissions regarding Oscar's internal controls, the "actual adequacy of those internal controls [] is relevant only to the extent that it, if at all, corroborates or contradicts [the Registration Statement]."  *NECA-IBEW Pension Tr. Fund v. Bank of Am. Corp.*, No. 10-CV-440, 2012 WL 3191860, at *17 (S.D.N.Y. Feb. 9, 2012).  As set forth in greater detail below, because the Amended Complaint fails to sufficiently plead any material misstatements or omissions regarding the adequacy of Oscar's internal controls, Defendants' motion to dismiss Plaintiffs' Section 11 Claim must be granted.

Defendants argue that Plaintiffs do not plead any specific facts demonstrating that Oscar

maintained faulty internal controls.  I agree.  Plaintiffs allege that, at the time of the IPO, Oscar's failure to maintain adequate controls and systems resulted in Oscar providing incorrect premium data to CMS, which, in turn, resulted in the $20 million risk adjustment expense that Oscar incurred following the RADV audit.  (Am. Compl. ¶ 4.)  Plaintiffs first allege that the fact of this risk adjustment expense itself demonstrates that Oscar must have "failed to maintain adequate controls."  (*Id.* ¶ 4.)  Next, Plaintiffs allege that Blakely's statement that the risk adjustment expense was "operational about how we got the data together to execute the audit," and that Oscar "made further enhancements in [its] risk adjustment process in 2021" constitute "admission[s] that the Company lacked adequate controls."  (*Id.* ¶¶ 55, 56.)  Finally, Plaintiffs allege that Oscar also "admitted" in the 2021 fiscal year 10-K that Oscar had a "material weakness in internal control over its financial reporting related to information systems."  (*Id.* ¶¶ 58, 59.)

These allegations fail to state a claim.  As an initial matter, the mere fact that Oscar incurred this risk adjustment expense following the audit is insufficient to establish that Oscar, in fact, failed to maintain adequate controls for several reasons.  First, Plaintiffs fail to identify which internal controls were allegedly insufficient.  *Cf. Janbay v. Can. Solar, Inc.*, No. 10-CV-4430, 2012 WL 1080306, at *9 (S.D.N.Y. Mar. 30, 2012) (dismissing Section 10(b) claim where "the [c]omplaint does not allege any facts explaining why or how [the company's] internal controls were materially deficient at the time [the company] made any of the challenged statements").

Second, Plaintiffs fail to allege contemporaneous facts demonstrating that any controls were faulty.  In evaluating claims under the Securities Act, the "truth of a statement . . . is adjudged by the facts as they existed" at the time of the statement.  *In re Flag Telecom Holdings,*

*Ltd. Sec. Litig.*, 352 F. Supp. 2d 429, 447 (S.D.N.Y. 2005).  Therefore, Plaintiffs' reliance on the

November 10, 2021 risk adjustment and subsequent events is akin to a "backward-looking

assessment" of Oscar's internal controls, which is not permitted.  *See In re TVIX Sec. Litig.*, 25

F. Supp. 3d 444, 450 (S.D.N.Y. 2014) ("[P]laintiffs are not allowed to plead Section 11 claims

with the benefit of 20/20 hindsight because Section 11 claim[s] cannot be based on a backward-

looking assessment of the registration statement." (internal quotation marks omitted)).

Moreover, Plaintiffs' attempt to frame the statements made by Oscar's CEO Scott Blackley

regarding the risk adjustment and Oscar's subsequent enhancements as "admission[s]" that Oscar

lacked adequate controls is improper and conclusory.  *See In re Magnum Hunter Res. Corp. Sec.

Litig.*, 26 F. Supp. 3d 278, 295 (S.D.N.Y. 2014) ("The fact that defendants recognized problems,

announced that they were implementing effective controls and procedures, and then recognized

more problems does not indicate that their statements were false at the time that they were

made."), *aff'd*, 616 F. App'x 442 (2d Cir. 2015); *see also N. Collier Fire Control & Rescue Dist.

Firefighter Pension Plan & Plymouth Cnty. Ret. Ass'n v. MDC Partners, Inc.*, No. 15-CV-6034,

2016 WL 5794774, at *17 (S.D.N.Y. Sept. 30, 2016) (rejecting Plaintiffs' argument that

Defendant's implementation of remedial steps supported an inference that controls were

inadequate).  The only factual support that Plaintiffs rely on is the $20 million risk adjustment

itself.  Thus, Plaintiffs' characterization of these "admission[s]" as a well-pled allegation that I

must accept as true, (*see* Pls.' Opp. 14–15), is incorrect.

  Third, and relatedly, Plaintiffs do not plead facts connecting Oscar's disclosure in its

2021 Form 10-K that it "did not design and maintain effective controls over certain information

[IT] general controls for information systems that are relevant to the preparation of [its] financial

statements" to its allegations regarding the weaknesses that led to the risk adjustment expense

13

following the RADV audit. As Defendants argue, Plaintiffs do not plead any facts that such weaknesses existed at the time of the March 2021 IPO (or that any Defendant knew of such weaknesses), nor does the Amended Complaint contain any allegations that the lack of premium data controls were necessarily linked to the weaknesses in information technology controls. Plaintiffs does not plead any requisite connection between the IT-controls-related disclosure and the Registration Statement, and thus fails to show how the incurring of a risk adjustment expense leads to the conclusion that Oscar had inadequate controls. This is, again, the kind of "backward-looking assessment of the registration statement" that cannot form the basis of a Section 11 claim. *See In re TVIX*, 25 F. Supp. 3d at 450.

Fourth, and finally, the IPO Documents "warned of the precise risks" that later materialized. *See Yaroni v. Pintec Tech. Holdings Ltd.*, 600 F. Supp. 3d 385, 395 (S.D.N.Y. 2022) ("[W]hen a registration statement warns of the exact risk that later materialized, a [S]ection 11 claim will not lie as a matter of law." (internal quotation marks omitted)); (*see also* Defs.' Mem. 17 (citing *Olkey v. Hyperion 1999 Term Trust, Inc.*, 98 F.3d 2, 5 (2d Cir. 1996)); *Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 39–40 (2d Cir. 2017); *Garnett v. RLX Tech. Inc.*, 632 F. Supp. 3d 574, 602 (S.D.N.Y. 2022); *In re Pretium Res. Inc. Sec. Litig.*, 256 F. Supp. 3d 459, 476 (S.D.N.Y. 2017), *aff'd sub nom. Martin v. Quartermain*, 732 F. App'x 37 (2d Cir. 2018).) Indeed, although Plaintiffs are correct that "cautionary words about future risk cannot insulate from liability the failure to disclose that the risk has transpired," (Pls.' Opp 16–17 (quoting *Rombach*, 355 F.3d at 173)), Plaintiffs have not pled facts sufficient to establish that any alleged internal controls issues existed at the time the Registration Statement was filed. Thus, Plaintiffs' argument that Oscar's disclosures were "generic" and "do not even address the internal control problems at issue here," (Pls.' Opp. 17), is misplaced. First, as noted above, Plaintiffs fail to

14

specifically identify the internal controls that were inadequate.  Second, Oscar explicitly stated, at the time of the IPO, that "there has recently been increased scrutiny by the DOJ" through RADV audits, that it was "refin[ing] its estimate as new information becomes available," and that "the result of risk adjustment programs may impact [Oscar's] revenue, add operational complexity, and introduce additional uncertainties that have a material adverse effect on [Oscar's] results of operations, financial condition, and cash flows."  (Am. Compl. ¶¶ 71–75.) Thus, although a plaintiff may defeat a motion to dismiss a securities fraud complaint by showing that "cautionary language did not expressly warn of or did not directly relate to the risk that brought about plaintiffs' loss," *Halperin v. eBanker USA.com, Inc.*, 295 F.3d 352, 359 (2d Cir. 2002), here, Oscar's disclosures made clear that it faced significant risks associated with RADV audits.

Accordingly, I find that Plaintiffs have not identified any actionable misstatements or omissions in the Registration Statement.  To rule otherwise would render a swath of corporate disclosures—much of which are required by law—the basis for securities laws claims, without regard to the materiality requirement under Section 11.

### 2.  Items 105 and 303 of Regulation S-K

Plaintiffs also allege that Defendants violated their affirmative disclosure obligations under SEC Regulation S-K Items 105 (formerly Item 503)*, see* 17 C.F.R. § 229.503 ("Item 105"), and 103, *see id*. 229.303 ("Item 303").  Plaintiffs allege that Defendants violated Item 103 because "the lack of internal controls constituted a trend" that "management knew about" and which would "likely have a material effect on the registrant's financial condition," (Pls.' Opp. 23; *see also* Am. Compl.¶ 55), and violated Item 105 by failing to disclose the alleged lack of internal controls, which existed prior to the issuance of the Registration Statement and were

"knowable" to Defendants.  (Pls.' Opp. 22.)  Defendants advance several arguments in moving to dismiss Plaintiffs' claim under Regulation S-K for failure to plead knowledge and materiality. However, I need not address each of these arguments because—as discussed above—Plaintiffs have not alleged with adequate specificity any material misstatements or omissions by Defendants and therefore cannot establish a Section 11 violation on the basis of the alleged misstatements or omissions.  Plaintiffs' failure to plead any actionable misstatements or omissions in the Registration Statement similarly dooms their Regulation S-K claim.  *See City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 184 (2d Cir. 2014) (rejecting Section 11 claim premised on Item 503 where "plaintiffs ha[d] not pleaded any misstatements in the Offering that give rise to a cause of action under the Securities Act"). Accordingly, because I find that the Amended Complaint fails to plead that any of the statements that Plaintiffs identify in the Registration Statement were false or misleading, Plaintiffs' Section 11 claims must fail.

### C.  *Section 15 Claims*

To state a claim under Section 15 of the Securities Act ("Section 15"), a plaintiff must allege "a primary violation by a controlled person, and [ ] control by the defendant of the primary violator."  *In re Global Crossing, Ltd. Sec. Litig.*, 322 F. Supp. 2d 319, 349 (S.D.N.Y. 2004) (citations omitted).  Because Plaintiffs have not adequately pled a Section 11 violation, their Section 15 claim "necessarily fails" as well.  *See Hutchison v. Deutsche Bank Sec. Inc.*, 647 F.3d 479, 490 (2d Cir. 2011); *Rombach*, 355 F.3d at 178 (concluding that because the district court "properly dismissed the primary securities claims" under Section 11, the Section 15 "secondary claims must also be dismissed").  Accordingly, Plaintiffs' Section 15 claims fail.

### D.  *Leave to Amend*

Plaintiffs seek leave to amend should I dismiss the Amended Complaint, (Pls.' Opp. 25), but does not provide any proposed amended pleadings.  Generally, leave to amend should be "freely give[n] when justice so requires."  Fed. R. Civ. P. 15(a); *see also Mirkin v. XOOM Energy, LLC*, 931 F.3d 173, 178 (2d Cir. 2019) (noting this "liberal amendment policy").  Given that Defendants have not opposed this request, and that district courts have "broad discretion in determining whether to grant leave to amend," *Gurary v. Winehouse*, 235 F.3d 792, 801 (2d Cir. 2000), I find that it is in the interest of justice to grant Plaintiffs leave to amend.

### V.  <u>Conclusion</u>

For the foregoing reasons, Defendants' motion to dismiss is GRANTED and the Amended Complaint is dismissed without prejudice.  Plaintiffs are granted leave to file a second amended complaint no later than 30 days from the date of this Opinion & Order.  Plaintiffs are warned that if they fail to file a second amended complaint within 30 days from the date of this Opinion & Order, I may dismiss this case with prejudice.  The Clerk of Court is respectfully directed to terminate the motion at Doc. 79.

SO ORDERED.

Dated: March 6, 2025
       New York, New York

Vernon S. Broderick
United States District Judge